Michael Goldberg (admitted *pro hac vice*)
Jeffrey Snow
Felicity Kohn (admitted *pro hac vice*)
PRYOR CASHMAN LLP
7 Times Square
New York, NY  10036
mgoldberg@pryorcashman.com
jsnow@pryorcashman.com
fkohn@pryorcashman.com
(212) 421-4100
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

--------------------------------------------------------X

TWO CANOES LLC,

                               Plaintiff,                    Civil Action No. 2:21-CV-19729

        - against -

AOBVIOUS STUDIO LLC and ADDIAN INC.        **SECOND AMENDED COMPLAINT**
d/b/a MEDIA FULFILLMENT,
                                     **JURY TRIAL DEMANDED**

                           Defendants.

--------------------------------------------------------X

      Plaintiff Two Canoes LLC ("TC" or "Plaintiff"), by its attorneys, Pryor Cashman LLP, as

and for its Second Amended Complaint herein, alleges as follows:

**INTRODUCTION**

      1.    This is a breach of contract and breach of warranty action originally brought by

Plaintiff TC against Defendants Aobvious Studio LLC ("Aobvious") and Addian Inc. d/b/a Media

Fulfillment ("Addian" or "Defendant") arising out of their breach of contract, breach of express

and implied warranties to supply authentic 3M masks to TC for delivery to its downstream customers, and negligent interference with prospective economic advantage.

2.      The case involves the downstream sale of counterfeit respiratory masks during the height of the COVID-19 outbreak.  Addian imported certain masks into the United States and sold them to Aobvious, who sold the masks to Two Canoes, who sold the masks to Qanex, Inc. ("Qanex"), who sold some of the masks to the North Carolina Division of Emergency Management ("NCDEM") and the balance of the masks to a foreign hospital group located in Dubai ("Al Azmath").

3.      Plaintiff TC received representations from both Aobvious and Addian that the masks were authentic 3M product. In reliance on those representations, TC entered into the transactions to purchase the masks and subsequently paid Aobvious in full for the masks ultimately sold to NCDEM and Al Azmath.

4.      Aobvious in turn paid Addian in full for the masks.

5.      Thereafter, concerns were raised by one of the end customers, NCDEM, regarding the authenticity of the masks supplied by Addian.  Upon hearing of these concerns, both Aobvious and Addian agreed to accept the return of the masks sold and delivered to NCDEM, and committed to replace those masks with authentic 3M masks.

6.      Following this issue with the NCDEM masks, Aobvious and Addian also agreed to the return of the other masks being delivered to Al Azmath, and further agreed to issue a full refund for those masks.

7.      Although the NCDEM and Al Azmath masks were all returned, accepted and never replaced as agreed upon by the parties (except for a portion of replacement masks that were sent by Addian to NCDEM, alleged by 3M Company ("3M") to be counterfeit and then seized and

destroyed with Addian's and Aobvious' consent in a separate litigation (the "Counterfeiting Litigation")), Addian never refunded any money to Aobvious, and Aobvious never refunded any money to TC.

8.      Thus, TC paid in full for masks that neither it nor its customers ever received (except for the portion of replacement masks Addian delivered to NCDEM that 3M alleged were counterfeit, and were later seized and then destroyed with Addian's consent).

9.      Understanding there was no legal basis to support this result, Addian repeatedly assured Aobvious and Two Canoes that it would refund the money.  However, after waiting for over a year, Two Canoes realized Addian had no intention of complying with its legal obligation and returning the money.

10.     TC sued Aobvious, the party with which it had contractual privity, for breach of contract, and sued both Aobvious and Addian for breach of express and implied warranties regarding the masks.

11.     As is standard in these cases, Aobvious asserted cross-claims against its upstream supplier, Addian, and expected Addian to sue the company that supplied it with the counterfeit product for redress of any damage it sustained.  Aobvious also asserted certain affirmative defenses against TC's claims.

12.     However, after the commencement of discovery and following the review of the facts, Aobvious determined that TC was rightfully and indisputably entitled to a return of its payments for the masks.

13.     Accordingly, Aobvious withdrew its defenses pursuant to a Consent Decree entered into with TC (Dkt. No. 46), which was so-ordered by the Court (Dkt. No. 48) (the "Consent Decree").  The Consent Decree further provided that Aobvious confessed judgment in the entire

amount paid to it by TC, along with any indirect and consequential damages in an amount to be proven at trial, for which TC is not made whole by Addian (*id*. at ¶ 7), and assigned all of its affirmative claims against Addian to TC.

14.    Accordingly, TC is now amending its complaint to, *inter alia*, stand in the shoes of Aobvious and pursue both TC's and Aobvious' claims against Addian stemming from Addian's initial sale of counterfeit 3M masks and its subsequent refusal to refund the money it promised to repay following its receipt of the returned NCDEM and Al Azmath masks.

15.    Addian's position in this litigation, namely that it can deliver counterfeit masks, receive payment in full, agree to accept the return of those masks, and then refuse to refund the money it received as payment once the goods are returned, lacks any semblance of legal merit.

## PARTIES

16.    Plaintiff TC is a Delaware corporation authorized to do business in New York, with an office at 767 Fifth Avenue, New York, New York 10153.  TC is, *inter alia,* in the business of selling personal protective equipment ("PPE") including, in particular, surgical gloves.  TC is also the assignee of the claims previously asserted by former defendant Aobvious against Defendant Addian (*see* Dkt. No. 35), as reflected in the assignment agreement attached hereto as Exhibit A (the "Assignment Agreement").

17.    Defendant Addian is a Wisconsin corporation which is registered as a foreign corporation with, and has its principal place of business in, the State of Georgia.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

19.     Venue is proper in this District under 28 U.S.C. § 1391(b) & (c) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTS

20.     In 2020, during the height of the COVID-19 pandemic, TC had several clients who were urgently looking to acquire 3M brand masks to fill open orders and meet the demands of their customers.

21.     The 3M brand was of critical importance to customers during the global COVID-19 pandemic because it was synonymous with high-quality masks that customers felt confident using for virus protection, including providing them to front-line medical workers.

**Defendant Offers To Supply Authentic 3M Brand Masks**

22.     In or around August 2020, Aobvious contacted TC and advised that it had access to authentic 3M masks for sale.

23.     Aobvious's supplier for these masks was Addian, who in turn had represented to Aobvious and others that the masks were authentic 3M product.

24.     TC had previously purchased other PPE through this supply chain, namely, Addian sold PPE to Aobvious, who in turn sold the goods to TC.

25.     By the time Aobvious reached out to TC regarding the availability of genuine 3M masks through this supply chain, both Aobvious and Addian had regularly been dealing in goods of this kind for at least five months.

26.     Indeed, Addian represented itself as a company that had experience dealing in PPE, particularly during the COVID-19 pandemic, and whose skill and knowledge in this area could be relied upon to obtain and supply genuine 3M products.

27.     For instance, Addam Wolworth, Addian's principal, specifically advised TC that Addian had supplied authentic 3M PPE to other hospital chains in the United States.

28.     Mr. Wolworth also personally represented to TC that he was knowledgeable and skilled in the area of PPE, including sales of PPE products.

29.     Relying on the express representations of both Aobvious and Addian that they would supply only authentic 3M masks, TC subsequently contacted Qanex, whom it knew to be in the market for authentic 3M masks to supply to its downstream customers.

**The North Carolina Order**

30.     In or about August 2020, TC did, in fact, receive an order for 3M Masks from Qanex for Qanex's ultimate customer, NCDEM (these masks hereinafter referred to as the "North Carolina Masks").

31.     TC in turn purchased 279,840 3M 1860 masks at a price of $3.70 per mask (for a total of $1,035,408) from Aobvious to fill the Qanex order, and subsequently paid Aobvious in full for the North Carolina Masks.

32.     Aobvious in turn entered into a valid and binding contract with Addian to purchase the North Carolina Masks, and subsequently paid Addian in full for the North Carolina Masks.

33.     At the time of these transactions, both Aobvious and Addian were aware that TC was purchasing the North Carolina Masks for sale to Qanex, who in turn was purchasing them for sale to NCDEM.

34.     In fact, Addian arranged shipment of the North Carolina Masks directly to NCDEM.

35.     Addian also communicated directly with at least one representative of NCDEM concerning NCDEM's receipt of the North Carolina Masks.

36.     TC would not have entered into this transaction were it not for express representations by both Aobvious and Addian that the North Carolina Masks were authentic 3M product.

37. The North Carolina Masks were sold by TC to Qanex for $1,427,184, resulting in a profit of $391,776.

38. On or about September 10, 2020, soon after Addian had delivered the North Carolina Masks to NCDEM,  NCDEM contacted Qanex and raised concerns regarding the North Carolina Masks' authenticity.

39. NCDEM was concerned, including because the labels on the boxes and containers appeared to be inauthentic, and the masks themselves had certain characteristics which raised serious questions as to whether the goods were counterfeit 3M products.

40. Given NCDEM's concerns, and the fact that the North Carolina Masks were to be used by doctors and nurses treating patients during the height of the COVID-19 pandemic, NCDEM refused to accept and pay for the North Carolina Masks.

41. As a result, Qanex refused to pay TC for the North Carolina Masks.

42. After NCDEM's concerns about the authenticity of the goods were reported upstream, in an effort to minimize the scope of any potential dispute and, upon information and belief, itself concerned that the North Carolina Masks it had supplied were counterfeit, Addian made a business decision explicitly confirmed in writing that it would accept the return of all of the North Carolina Masks.  Addian also agreed in writing to promptly replace the entire NCDEM order with new, compliant goods.

43. By way of example, in a text message chain including principals of TC, Aobvious, Addian, and Qanex, on or about September 11, 2020, Addam Wolworth of Addian stated, "Bottom line for me is that if they feel uncomfortable I'd like to put my best foot forward and go about getting them something they don't consider counterfeit."

44.     Addian expressly agreed to accept return of the North Carolina Masks, and to replace them with authentic 3M product.

45.     Thereafter, on several occasions both orally and in writing, both Aobvious and Addian agreed to accept a return of all of the North Carolina Masks and pledged to promptly deliver authentic replacement goods.

46.     In the Consent Decree entered into by Aobvious in this action, Aobvious re-confirmed that "Aobvious and Addian expressly agreed to accept the return of the [North Carolina] Masks, and to replace those Masks with other masks that would definitively not be counterfeit." (Consent Decree, ¶ 6(h).)

47.     On or about September 20, 2020, Mr. Woolworth of Addian provided a letter to representatives of TC and Aobvious which, upon information and belief, was intended to be provided to their downstream customers, including but not limited to NCDEM, assuring them that "[t]hroughout this crisis, we have supplied personal protective equipment to those in need.  We are able to deliver 3M 1860 healthcare respirators, and have successfully done so."

48.     In reliance on Aobvious and Addian's agreement to accept return of and replace the North Carolina Masks, and in reliance on Addian's further assurances regarding the authenticity of its 3M masks, TC and Qanex arranged with NCDEM for the return and replacement of the North Carolina Masks.

49.     Subsequently, all of the 279,840 North Carolina Masks were returned to Addian.

50.     Addian accepted the return of all 279,840 North Carolina Masks, in partial compliance with its obligations.

51.     However, notwithstanding Defendants' express assurances that all of the North Carolina Masks would be replaced, only 156,000 replacement units were delivered by Addian to NCDEM (the "North Carolina Replacement Masks").

52.     The other 123,840 replacement units were never delivered by Addian in breach of its agreement.

53.     Moreover, shortly after delivery of the North Carolina Replacement Masks,  3M commenced the Counterfeiting Litigation against, *inter alia*, Aobvious and Addian in Federal District Court in the Middle District of Georgia, asserting that, *inter alia*, the North Carolina Replacement Masks Addian and Aobvious had sold and delivered were counterfeit 3M masks.

54.     In connection with the Counterfeiting Litigation, the Court issued an order pursuant to which all of the North Carolina Replacement Masks, and apparently additional masks, were seized from NCDEM and others (the "Seizure Order").

55.     In the Counterfeiting Litigation, Addian and Aobvious did not prove that the masks they had delivered were authentic, instead choosing to settle the action.

56.     As part of that settlement, the defendants in the Counterfeiting Litigation, including both Aobvious and Addian, consented to the destruction of the masks that were seized pursuant to the Seizure Order, including the North Carolina Replacement Masks, and agreed not to deal in 3M Masks moving forward.

57.     Accordingly, since Addian had previously been paid in full for the North Carolina Masks, and accepted the return of those masks, and never replaced them, except for the limited North Carolina Replacement Masks which were subsequently seized by Court Order and destroyed on consent of the parties to the Counterfeiting Litigation, it agreed to fully refund the monies it had received for those goods and repeatedly assured the parties that refund was forthcoming.

58.     However, Addian never made that refund.

59.     As a result, TC paid for 279,840 masks but, after returning all of the North Carolina Masks pursuant to agreement, did not receive either the masks (or the benefit of the North Carolina Replacement Masks reaching the downstream customer) or a refund for its purchase.

60.     As stated by Aobvious in the Consent Decree, Addian has refused to refund to Aobvious the amounts Aobvious paid to Addian for the North Carolina Masks.  (Consent Decree, ¶ 6(o).)

61.     Aobvious admitted in the Consent Decree that it has no legal basis to deny liability to TC for the monies owed to TC for the North Carolina Masks.  (*Id.*, ¶ 6(q).)

62.     Likewise, Addian has no legal basis to deny liability to Aobvious for the monies owed for the North Carolina Masks.

**The Al Azmath Masks**

63.     Separately, in or about October 2020, TC placed an order with Aobvious for approximately 100,800 3M 1860s masks at a price of $3.25 per mask (for a total of $327,600), for sale and delivery to Al Azmath (the "Al Azmath Masks"), and ultimately paid Aobvious in full for those masks.

64.     Aobvious in turn entered into a valid and binding contract with Addian to purchase the Al Azmath Masks, and paid Addian in full for the Al Azmath Masks.

65.     At the time of these transactions, both Aobvious and Addian were aware that TC was purchasing the Azmath Masks for ultimate sale and delivery to Al Azmath.

66.     The Al Azmath Masks were invoiced by TC to Al Azmath for $403,200, resulting in a profit of $75,600.

67.    Aobvious and Addian knew of the importance to Al Azmath that the masks be genuine 3M product.

68.    In purchasing the Al Azmath Masks from Aobvious, TC relied upon the express representations made by both Aobvious and Addian that the Al Azmath Masks would be genuine 3M masks.

69.    Following payment from TC to Aobvious and Aobvious to Addian, the Al Azmath Masks were shipped by Addian to Hong Kong for shipment on to Al Azmath in Dubai.

70.    Shortly after the Al Azmath Masks arrived in Hong Kong, TC learned of NCDEM's complaints regarding the authenticity of the North Carolina Replacement Masks and the Counterfeiting Litigation.

71.    TC did not want to deliver counterfeit masks to another customer and requested a return authorization for the Al Azmath Masks.

72.    Aobvious and Addian consented to the return of the Al Azmath Masks and committed to issue a full refund.

73.    The Al Azmath masks were returned pursuant to the express directions provided to TC, and were accepted at the designated warehouse.

74.    However, Addian never issued a refund to Aobvious (or any other party), and Aobvious never issued a refund to TC.

75.    As a result, TC paid in full for 100,800 masks, but did not receive either the masks or a refund of the purchase it had paid.

76.    As stated by Aobvious in the Consent Decree, Addian has refused to refund to Aobvious the amounts Aobvious paid to Addian for the Al Azmath Masks, despite representations that it would do so.  (Consent Decree, ¶ 6(n)-(o).)

77.     Aobvious admitted in the Consent Decree that it has no legal basis to deny liability to TC for the monies owed to TC for the Al Azmath Masks.  (*Id.*, ¶ 6(q).)  Likewise, Addian has no legal basis to deny liability to Aobvious for the monies owed for the Al Azmath Masks.

**Qanex Threatens Suit Against TC**

78.     On or about June 8, 2021, Qanex sent a letter to TC demanding approximately $8 million in damages resulting from alleged lost profits, cancellation of pending orders, and damage to its reputation stemming from the North Carolina Masks which had to be returned, the limited number of North Carolina Replacement Masks which were promptly seized pursuant to Court Order, and the Al Azmath Masks which were never delivered, as well as for the costs associated with Qanex's having to defend itself in connection with the Counterfeit Litigation related to the goods sold to it by TC which were supplied by Aobvious and Addian.

79.     Aobvious and Addian are liable to TC and must indemnify TC against all losses and damages, including reasonable attorneys' fees, incurred in defending against the claims of Qanex, and any liability it may incur to Qanex in connection with the allegedly counterfeit 3M masks.

**AS AND FOR A**
**FIRST CAUSE OF ACTION**
**(Breach of Contract against Addian)**

80.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 79, as if fully set forth herein.

81.     Pursuant to the Assignment Agreement, Aobvious assigned its cause of action for breach of contract against Addian to TC.  *See* Ex. A.

82.     The contracts between Addian and Aobvious for the sale and delivery of the North Carolina Masks and the Al Azmath Masks were valid and binding in all respects.

83.     A key element of these contracts was that the North Carolina Masks and the Al Azmath Masks would be authentic 3M product.

84.     Aobvious paid Addian in full for the North Carolina Masks and the Al Azmath Masks.

85.     The North Carolina Masks sold and delivered by Addian pursuant to its contract were alleged to be counterfeit.

86.     Addian agreed to replace the allegedly counterfeit North Carolina Masks with authentic 3M masks.  This, too, was a valid and binding agreement.  However, although it received and accepted the return of the North Carolina Masks, it replaced only a portion of them, and the ones it did replace were also alleged to be counterfeit, seized pursuant to the Seizure Order, and destroyed with Addian's consent.

87.     Addian never refunded the monies paid to it by Aobvious for the allegedly counterfeit North Carolina Masks.

88.     Therefore, Addian breached its contracts with regard to the North Carolina Masks (the "North Carolina Contracts").

89.     In addition, following the allegations that the North Carolina Masks were counterfeit, Addian also agreed to accept the return of, and refund the monies paid to it by Aobvious for, the Al Azmath Masks, given the grave concern that they too were counterfeit goods. This, was also a valid and binding contract.

90.     The Al Azmath Masks were returned, but Addian never refunded the monies paid to it for the allegedly counterfeit Al Azmath Masks.

91.     Therefore, Addian breached its contracts with regard to the Al Azmath Masks (the "Al Azmath Contracts").

92.     Aobvious complied with its obligations in all respects with regard to the North Carolina Contracts and Al Azmath Contracts (together, the "Contracts").

93.     As a result of the foregoing, Addian is liable to Aobvious in an amount to be proven at trial, but believed to be in excess of $1,900,000.00, including the lost profits related to the downstream sale of the North Carolina Masks and Al Azmath Masks, incidental and consequential damages related to Aobvious' breaches of the Contracts, and interest thereon

**AS AND FOR A**
**SECOND CAUSE OF ACTION**
**(Breach of Warranty – Indemnification against Addian)**

94.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 93, as if fully set forth herein.

95.     Pursuant to the Assignment Agreement, Aobvious assigned its claims for indemnification against Addian to TC.  *See* Ex. A.

96.     The claims asserted by TC in this action are based on the alleged counterfeit nature of the North Carolina Masks and Al Azmath Masks (the "Goods") that were purchased by Plaintiff from Aobvious, who in turn purchased them from Addian.

97.     TC's customer, Qanex, has made demands for reimbursement of losses and payment of other damages against TC for selling it counterfeit goods, and TC is alleged to be liable to Qanex and possibly other downstream customers.

98.     Aobvious entered into a Consent Decree with TC in which it agreed to pay TC the cost of the Goods paid to it by TC, along with any direct, indirect, and consequential damages, as well as any indemnification obligations of TC resulting from its sale of the Goods, in an amount to be proven at trial.  *See* Consent Decree, ¶ 7.

99.     Pursuant to NJ Stat. § 12A:2-312 ("UCC 2-312"), by dint of selling the Goods to Aobvious, which were then sold to TC, Addian warranted that the Goods were free from any claim by a third party for trademark infringement, trade dress infringement, and copyright infringement.

100.    Pursuant to NJ Stat. § 12A:2-314 ("UCC 2-314"), by dint of selling the Goods to Aobvious, which were then sold to TC, Addian warranted that the Goods would be merchantable.

101.    Addian is, and was at the time of the Contracts, a merchant with respect to the Goods.

102.    At the time of the Contracts, Addian regularly dealt in PPE.

103.    3M claimed that its trademarks had been violated and the Goods were counterfeit, and neither Addian nor Aobvious chose to contest the allegations in the subsequently filed Counterfeiting Litigation.

104.    Addian breached the implied warranty under UCC 2-312 that the Goods would be free from any claim of trademark or copyright infringement.

105.    Addian breached the implied warranty under UCC 2-314 that the Goods would be merchantable.

106.    Addian breached its warranties that the Goods would be genuine by selling the North Carolina Masks, which were rejected as counterfeit by one end customer and alleged by 3M to be counterfeit, and the Al Azmath Masks, which were returned with Aobvious and Addian's express consent due to grave concerns that they, too, were counterfeit.

107.    As a result of Addian's breaches of the implied warranties under UCC 2-312 and UCC 2-314, TC and Aobvious are entitled to indemnification from Addian for all losses and damages resulting from that breach, including for any liability they may incur to Qanex or any other party that received the Goods, by way of settlement or judgment in an action, including

damages, assessments or obligations of any kind, and for costs and attorneys' fees incurred in defending claims brought against them by such parties, in an amount to be determined at trial.

**AS AND FOR A**
**THIRD CAUSE OF ACTION**
**(Breach of Warranty – Damages against Addian)**

108.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 107, as if fully set forth herein.

109.    Pursuant to the Assignment Agreement, Aobvious assigned its claims for damages resulting from breach of the implied warranties against Addian to TC.  *See* Ex. A.

110.    Addian is, and was at the time of the Contracts, a merchant with respect to the Goods.

111.    At the time of the Contracts, Addian regularly dealt in PPE.

112.    Pursuant to UCC 2-312, by dint of selling the Goods to Aobvious, which were then sold to TC, Addian warranted that the Goods were free from any claim by a third party for trademark infringement, trade dress infringement, copyright infringement and similar claims.

113.    Pursuant to UCC 2-314, by dint of selling the Goods to Aobvious, which were then sold to TC, Addian warranted that the Goods would be merchantable.

114.    Addian breached its warranties to TC and Aobvious because the Goods were alleged by several parties to be counterfeit.

115.    Moreover, the veracity of the claims that the Goods were counterfeit was expressly and impliedly acknowledged by Addian which, *inter alia*,  agreed to accept the return of the Goods and elected not to dispute the Counterfeiting Litigation brought against it which related in part to the North Carolina Replacement Masks.

116.    TC paid Aobvious in full for the Goods.

117.    As stated by Aobvious in the Consent Decree, Aobvious paid Addian in full for the Goods.  *See* Consent Decree, ¶ 6(e)-(f).

118.    As a result of Addian's breaches of its warranties pursuant to UCC 2-312 and 2-314, TC has incurred damages in the amount of the purchase price paid for the Goods, together with its lost profits from the sale of the Goods, and both TC and Aobvious incurred damages in the amount of the costs incurred in handling and transporting the Goods, together with other consequential and incidental damages and attorneys' fees.

### AS AND FOR A
### FOURTH CAUSE OF ACTION
### (Breach of Express Warranty against Addian)

119.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 118, as if fully set forth herein.

120.    Pursuant to the Assignment Agreement, Aobvious assigned to TC all claims, demands, and causes of action against Addian arising from its purchase of the Goods from Addian, which includes breach of Addian's express warranty that the Goods were genuine 3M masks.

121.    Addian described the masks it supplied to Aobvious for re-sale to TC as genuine 3M 1860 and 3M 1860s masks.

122.    Addian repeatedly assured both Aobvious and TC that the product it was supplying was genuine and authentic 3M product.

123.    In reliance on Addian's express representation, Aobvious repeated to TC that the product it was supplying from Addian was genuine and authentic 3M product.

124.    Addian's description of the Goods as authentic 3M masks was the basis of the bargain.  Absent that express representation, neither Aobvious nor TC would have entered into the transactions at issue.

125.    The product supplied by Addian did not conform to the description it provided, as the authenticity of the North Carolina Masks was questioned by the end customer, which subsequently reported its concerns to 3M, which in turn prompted the filing of the Counterfeiting Litigation alleging the North Carolina Replacement Masks to be counterfeit.

126.    In connection with the Counterfeiting Litigation, Addian consented to the destruction of the North Carolina Replacement Masks.

127.    Following the commencement of the Counterfeiting Litigation, Addian also consented to the return of and refund for the Al Azmath Masks.

128.    Thus, upon information and belief, the Goods were not authentic 3M 1860 and 3M 1860s masks, and Addian breached its express warranties pursuant to N.J. Stat. §12A:2-313.

129.    As a consequence of Addian's breach of its express warranties, TC has incurred damages in the amount of the purchase price paid for the Goods, together with its lost profits from the sale of the Goods, and both TC and Aobvious have incurred damages in the amount of the costs incurred in handling and transporting the Goods, together with other consequential and incidental damages and attorneys' fees.

## AS AND FOR A
## FIFTH CAUSE OF ACTION
### (Breach of Warranty of Fitness for a Particular Purpose against Addian)

130.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 129, as if fully set forth herein.

131.    Addian was aware that TC, its customer Qanex, and Qanex's downstream customers all required authentic 3M masks, in part because the 3M brand provided necessary assurances to the customers, and those to whom they planned to distribute the masks, as to the masks' quality and ability to protect users during the COVID-19 crisis.

132.    Addian represented itself as skilled in the field of PPE such that TC and Aobvious could rely upon its knowledge, skill and judgment to obtain authentic 3M masks.

133.    The product supplied by Addian did not conform to the particular purpose for which the product was required, as the masks' authenticity was questioned by the end customer, which subsequently reported its concerns to 3M, which in turn prompted the filing of the Counterfeiting Litigation alleging the masks to be counterfeit.

134.    In the Counterfeiting Litigation, the Court issued a preliminary injunction and seizure order based upon its finding that the masks at issue appeared to the Court to be counterfeit.

135.    Later in the Counterfeiting Litigation, Addian also consented to the destruction of many Addian masks, including the North Carolina Replacement Masks.

136.    Thus, upon information and belief, the masks supplied by Addian were not authentic 3M 1860 masks, and Addian breached its warranties pursuant to N.J. Stat. § 12A:2-315 that the goods would be fit for the particular purpose required, namely, that they would be authentic 3M goods.

137.    As a consequence of Addian's breach of its warranties of fitness for a particular purpose, TC has incurred damages in the amount of the purchase price paid for the Goods, together with its lost profits from the sale of the Goods, and TC and Aobvious have incurred damages in the amount of the costs incurred in handling and transporting the Goods, together with other consequential and incidental damages and attorneys' fees.

### AS AND FOR A
### SIXTH CAUSE OF ACTION
### (Negligent Interference with Prospective Economic Advantage against Addian)

138.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 137, as if fully set forth herein.

139.     Addian was aware that TC intended to re-sell the Goods to third parties, and knew that TC had entered into contracts with third parties for the sale of the Goods.

140.     Addian was aware or should have been aware that if it did not act with due care to ensure that the Goods were not counterfeit, its actions would interfere with TC's relationship with its customers and cause TC to lose the economic benefits of its agreements with its customers.

141.     Addian was negligent in that, despite having reason to suspect the origin of the Goods sold to TC, Addian failed to verify the origin and source of the goods, and failed to verify the genuineness of the Goods.

142.     After the original allegations that the Goods were counterfeit, Addian accepted the return of the Goods but still delivered the North Carolina Replacement Goods which were also alleged to be counterfeit, and which Addian agreed could be seized and destroyed in the context of the Counterfeiting Litigation.

143.     Following the commencement of the Counterfeiting Litigation, Addian also consented to the return of and refund for the Al Azmath Masks, due to grave concerns about their authenticity.

144.     Addian's negligence and willful misconduct caused damage to TC by virtue of the fact that TC's customers have threatened legal action against it, and have refused to place orders for any other goods.

145.     As a direct result of the foregoing, TC is entitled to damages for the negligent conduct of Addian in an amount to be determined at trial, but believed to be in excess of $1,000,000.

**WHEREFORE**, Plaintiff Two Canoes LLC respectfully demands judgment in its favor and against Addian Inc. d/b/a Media Fulfillment as follows:

(a)  On the First Cause of Action, an award of damages in favor of TC and against Addian in an amount to be proven at trial, but believed to be in excess of $1,900,000.00, including the lost profits related to the Goods, incidental and consequential damages related to Addian's breaches of the Contracts, plus interest thereon;

(b)  On the Second Cause of Action, indemnification of TC and Aobvious by Addian against all losses and damages, including reasonable attorneys' fees, in defending the claims of each company's downstream customers, including but not limited to TC and its customers, including Qanex and its customers, and any liability TC may incur to Qanex by way of settlement or judgment;

(c)  On the Third Cause of Action, indemnification by Addian against all damages incurred by TC in the amount of the purchase price paid for the Goods, together with its lost profits from the sale of the Goods, and all damages incurred by TC and Aobvious in the amount of the costs incurred in handling and transporting the Goods, plus other consequential and incidental damages and attorneys' fees;

(d)  On the Fourth Cause of Action, indemnification by Addian against all damages incurred by TC in the amount of the purchase price paid for the Goods, together with its lost profits from the sale of the Goods, and all damages incurred by TC and Aobvious in the amount of the costs incurred in handling and transporting the Goods, plus other consequential and incidental damages and attorneys' fees;

(e)  On the Fifth Cause of Action, indemnification by Defendants against all damages incurred by TC in the amount of the purchase price paid for the Goods, together with its lost profits from the sale of the Goods, and all damages incurred by TC and Aobvious in the amount of the

costs incurred in handling and transporting the Goods, plus other consequential and incidental damages and attorneys' fees; and

(f)    On the Sixth Cause of Action, damages for the negligent conduct of Addian in an amount to be determined at trial, but believed to be in excess of $1,000,000;

(g)    Together with such other, further and different relief as this Court deems just and proper.

Dated:  New York, New York
         December 9, 2022

PRYOR CASHMAN LLP


By: */s/ Jeffrey Snow*
    Michael G. Goldberg (admitted *pro hac vice*)
    Jeffrey Snow
    Felicity Kohn (admitted *pro hac vice*)
7 Times Square
New York, New York 10036-6569
mgoldberg@pryorcashman.com
jsnow@pryorcashman.com
fkohn@pryorcashman.com
(212) 421-4100

*Attorneys for Plaintiff*

# EXHIBIT A

ASSIGNMENT

State of New Jersey

County of __Passaic__

      For value received, including the voluntary settlement of claims pending against it, Aobvious Studio LLC ("Aobvious"), as Assignor, hereby assigns and transfers to Two Canoes LLC ("Two Canoes"), as Assignee, for Two Canoes' use and benefit, any and all sums of money now due or owing to Aobvious, and all claims, demands, and causes of action of whatever kind and nature that Aobvious had, now has, or may have against Addian, Inc. d/b/a Media Fulfillment ("Addian"), or any other person or persons, whether jointly or severally, arising out of, or for, any loss, injury, or damage sustained by Aobvious, or cause or causes of action relating to or connected with, its purchase of 3M masks ("Masks") from Addian, which were intended for ultimate sale and delivery to the North Carolina Division of Emergency Management and/or to the Al Azmath hospital group.

      This assignment specifically includes, but is not limited to, Aobvious' Cross-claims against Addian asserted in Aobvious' Amended Answer and Cross-claims in connection with the action captioned *Two Canoes LLC v. Aobvious Studio LLC and Addian Inc. d/b/a Media Fulfillment*, Case No. 2:21-cv-19729:

1. Count 1: Claim for contribution against Addian in the event that Aobvious is found liable or responsible to Plaintiff.

2. Count 2: Claim for indemnification against Addian in the event that Aobvious is found liable or responsible in any way to Plaintiff, based upon statutory and/or common law and/or terms of any written and/or oral contracts, agreements, or other documents in existence between the parties.

3. Count 3: Addian breached the contract between Aobvious and Addian for sale of Masks to

Aobvious from Addian by, *inter alia*, (a) failing to deliver the agreed-upon Masks; and (b) accepting return of the Masks, or consenting to their destruction, without returning the purchase price.

4. Count 4: Addian breached its implied warranties to Aobvious pursuant to UCC 2-312 that the goods would not violate any trademark or intellectual property laws, and pursuant to UCC 2-314 that the goods would be merchantable.

This assignment is without recourse, and Assignor does not guarantee payment of or recovery related to the assigned claim. Assignor agrees, however, that in the event any payment(s) under any claim(s) have been or are made to Assignor, it will promptly transmit such payment(s) to Assignee.

Assignor appoints Assignee and its legal representatives, and assigns the attorney of Assignor with power to demand and receive satisfaction of the assigned claims, and, in the name of Assignor, but at Assignee's expense, to take whatever legal action may be necessary to enforce such claims.

Dated: September 19, 2022

_____

Nathan Kamelhar, [  President  ]
Aobvious Studio LLC
48 Lehigh Ave
Clifton, NJ 07012