## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TWO CANOES LLC, | Civil Action No. |
| Plaintiff, | 21-cv-19729 (SDW) (JRA) |
| v. | **REPORT AND** |
| ADDIAN INC., | **RECOMMENDATION** |
| Defendant. | |

**José R. Almonte, U.S.M.J.**

Plaintiff Two Canoes LLC ("Two Canoes" or "Plaintiff") asks the Court to find that Defendant Addian Inc. d/b/a Media Fulfillment ("Addian" or "Defendant") spoliated evidence by failing to preserve WeChat messages. ECF Nos. 87-92, 94 (the "Motion"). Plaintiff seeks sanctions, pursuant to Rule 37(e)(2) of the Federal Rules of Civil Procedure, including adverse inferences to be applied at the summary judgment stage. *Id.* Defendant opposes the Motion, arguing in part that no relevant WeChat messages existed while Defendant had a duty to preserve. ECF No. 93. The Honorable Susan D. Wigenton, U.S.D.J., referred the Motion to me for a Report and Recommendation. I have considered the Motion on the papers without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, I respectfully recommend that the Motion be **GRANTED IN PART AND DENIED IN PART**.

I.     **Background**

This case arises out of the chaos caused by the COVID-19 pandemic.  People in the United States, and worldwide, were desperate for Personal Protective Equipment ("PPE"), including N-95 masks manufactured by the company 3M.  Those masks were in high demand and short supply.  It is against this backdrop that Addian, through intermediaries, allegedly sold counterfeit 3M masks to Two Canoes.  *See generally* Second Am. Compl., ECF No. 60.

It is important to understand the nature of the relationship between Two Canoes and Addian.  Addian is a small, family-owned company with Addam Wolworth as its principal.  *Id*. ¶ 27; Wolworth Decl. ¶ 2, ECF No. 93-1.  According to Addian, its business model centers around providing logistic services to its customers. Wolworth Decl. ¶ 2.  One of those customers was Aobvious Studio LLC ("Aobvious"), who, in turn, provided brokerage or logistical services to its customers, including Two Canoes.  *Id*. ¶ 4; Second Am. Compl. ¶¶ 22-25; *see generally* Third Party Compl., ECF No. 4.

In 2020, Wolworth reached out to Robert Fisher, a contact in China who Wolworth understood could supply N-95 masks from a 3M manufacturer in China. Wolworth Decl. ¶¶ 5-6.  Fisher supplied masks to Addian (through Wolworth as his main contact).  *Id*. ¶¶ 5-7.  Addian supplied the masks to Aobvious, which then supplied the masks to Two Canoes, which further supplied the masks to resellers who sold the masks to end-users.  *Id*. ¶ 4; Second Am. Compl. ¶ 2.

Eventually, on November 5, 2020, 3M filed a lawsuit against different entities, including Addian, alleging that the masks being sold were counterfeited (hereinafter, "3M Lawsuit" or "3M Litigation"). Wolworth Decl. ¶ 8; Second Am. Compl. ¶ 7; ECF Nos. 88 at 9, 93 at 5. Wolworth was aware that he had a legal obligation to retain information related to the 3M Lawsuit. ECF No. 89-7 at 92:20-94:8. 3M and Addian settled that lawsuit in June 2021, with Addian agreeing to enter into a consent judgment and a permanent injunction. Wolworth Decl. ¶ 11; Henner Decl. ¶ 12, ECF No. 93-2; ECF Nos. 88 at 10, 89-15; *see also* Consent Judgment and Permanent Injunction at ¶ 6, *3M Co. v. Addian Inc., et al.*, No. 20-cv-04515 (N.D. Ga. June 17, 2021), ECF No. 98. The 3M Lawsuit was officially terminated on February 28, 2022. ECF Nos. 88 at 10, 89-15. In the interim, on July 14, 2021, Two Canoes' counsel threatened litigation against Aobvious, the intermediary between Two Canoes and Addian. ECF Nos. 88 at 10, 89-16. On July 16, 2021, Aobvious's counsel forwarded that email to Addian's counsel, asking whether Addian had "any update." Goldberg Decl. ¶¶ 18-19, ECF No. 89; ECF Nos. 89-16, 89-17. After being unable to resolve their dispute, Two Canoes filed this lawsuit against Aobvious on November 4, 2021, ECF No. 1, and Aobvious, in turn, filed a third-party complaint against Addian on January 7, 2022. *See generally* Third Party Compl.[1]

Important to the current dispute is what happened with the communications between Addian's principal, Wolworth, and his contact in China, Fisher. No one

---

[1] Two Canoes eventually resolved its case against Aobvious, and Aobvious assigned its claims against Addian to Two Canoes. ECF No. 56.

disputes that Addian collected and produced to Two Canoes: (i) e-mails to, from, or copying, Fisher; (ii) documents provided to Addian by Fisher; (iii) text messages with Fisher; and (iv) a couple of e-mails Addian received, which Addian believes were sent by one of Fisher's "upstream" contacts with whom Addian had no other contact.[2]  ECF No. 93 at 1-2; Henner Decl. ¶ 14.  What is missing, and what appears to be at issue, are communications between Wolworth and Fisher through a platform known as "WeChat."  WeChat is an ephemeral messaging application that allows messages to disappear from WeChat's servers

> Once 72 hours has lapsed since you sent your chat message, or 120 hours for images, audio, videos, and files, WeChat permanently deletes the content of the message on our servers.  Upon deletion, neither WeChat nor any and [sic] third party will be able to view the content of your message.

ECF No. 93-7.  Once the message disappears from the WeChat servers, it remains within a user's application only on the user's device, such as a cellphone, ECF No. 93-8, unless it has been backed up otherwise.

According to Wolworth, he communicated with Fisher primarily via live phone calls and secondarily by email and text messages; however, he did communicate with Fisher via WeChat "a couple of times."  Wolworth Decl. ¶ 7; ECF No. 93-3 at 64:24-65:15.  Unfortunately, those WeChat messages are not available through

---

[2] Two Canoes' moving brief also appears to argue that Wolworth failed to preserve relevant WhatsApp messages.  ECF No. 88 at 3-4, 6.  But Wolworth testified during his deposition that he did not communicate with Fisher through WhatsApp.  ECF No. 93-3 at 65:6-65:13.  Moreover, Two Canoes does not appear to argue that the WhatsApp communications that Wolworth may have had with others could not be recovered through some other means.  In fact, Two Canoes admits that "although Mr. Wolworth's copies of the communications between himself [and other businessmen] were lost, those communications were properly preserved and produced by [those other individuals]."  ECF No. 88 at 8.  Thus, the focus of this opinion is on the WeChat messages between Wolworth and Fisher.

Wolworth's phone. Two Canoes points to Wolworth's own testimony as evidence that he discarded at least three cellphones in the span of approximately a year and a half: the first one in September 2020 (ECF No. 89-7 at 83:10-84:16), the second in October 2021 (ECF No. 89-7 at 87:16-24, 102:4-25), and the third in February 2022 (ECF No. 89-7 at 94:21-25, 103:16-105:10). ECF No. 88 at 5-6. It is worth noting, however, that the first phone, *i.e.,* the one he used until September 2020, broke before this or any other litigation began. The breaking of the first phone is nonetheless important because Wolworth testified that the "things on the old phone" did not transfer to the second phone. ECF No. 89-7 at 90:13-22. Thus, he was aware that certain data from one phone would not automatically transfer to a new phone.

According to Wolworth, around October 2021—before this lawsuit was filed but after Addian had been named as a defendant in the 3M Litigation—he accidentally dropped his cellphone on concrete stairs, rendering that phone inoperable.[3] Wolworth Decl. ¶ 13. When Wolworth went to replace this phone, he learned that the phone that he wanted as a replacement was not available at the time, so he purchased a flip phone as a temporary replacement and reordered the same phone that he had broken. *Id*. ¶ 14; ECF No. 93-3 at 103:16-104:5. Thereafter, he was shipped the wrong phone, at which time he learned that the phone that he ordered had been discontinued. Wolworth Decl. ¶ 14; ECF No. 93-3 at 104:6-25. The phone company advised him

---

[3] Plaintiff highlights the inconsistency in the record as to the exact date that Wolworth broke this phone, but states as an "undisputed" fact, that "Mr. Wolworth ***claims*** to have broken a second phone in October 2021 that contained admittedly relevant communications, including with Mr. Fisher, and to have discarded the second phone so that there could be no forensic recovery of those communications." ECF No. 94 at 1-2 (emphasis added and omitted).

that he could trade in the incorrect phone, so he preordered the phone that he currently uses. *Id.* He picked it up in February 2022. *Id.* While it is not clear whether or when Wolworth used "the incorrect phone," he testified at his deposition that he used "three or four" phones between October 2021 and February 2022. ECF No. 88 at 7 (citing ECF No. 89-7 at 103:16-105:10 ("in that period of time, I used three or four phones . . . .")). At some point during this process, Wolworth left the inoperable phone (broken in October 2021) at the store for proper electronics recycling (hereinafter, the "Recycled Phone"). Wolworth Decl. ¶ 15. At no point were the WeChat messages from the Recycled Phone transferred to any other phone. The parties dispute whether Wolworth made reasonable efforts to recover any lost WeChat messages, to the extent they existed.

The only other person who might have these messages is Fisher. Plaintiff has served a subpoena to Fisher via electronic means,[4] but he has not responded, and Plaintiff is unable to locate him physically. *See generally* ECF No. 90. The Court must, therefore, resolve whether Wolworth, and Addian by extension, spoliated WeChat messages and, if so, what sanctions should be imposed, if any.

## II.    **Legal Standard**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Manning v. Safelite Fulfillment, Inc. (Manning II)*, No. 17-cv-2824, 2021 WL 3542808, at *1 (D.N.J. Aug. 11, 2021) (quotation omitted); *Manning*

---

[4] *See* ECF Nos. 72-73 (granting leave to serve subpoenas on Fisher by alternative means).

*v. Safelite Fulfillment, Inc. (Manning I)*, No. 17-cv-2824, 2021 WL 3557582, at \*4 (D.N.J. Apr. 29, 2021) *report and recommendation adopted in relevant part*, 2021 WL 3542808 (D.N.J. Aug. 11, 2021).  Rule 37(e) of the Federal Rule of Civil Procedure governs the spoliation of Electronically Stored Information ("ESI").[5]  Rule 37(e) states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court [may fashion appropriate sanctions].

Accordingly, for the Court to make a finding that spoliation occurred, the moving party bears the burden of showing that (1) the ESI should have been preserved in anticipation or conduct of litigation; (2) the ESI was lost; (3) the information was lost because the party failed to take reasonable steps to preserve it; and, (4) the information cannot be recovered elsewhere, restored, or replaced.  *Manning I*, 2021 WL 3557582, at \*5 (citations omitted).[6]  "When a district court finds that a party has spoliated evidence, it has the authority to fashion an appropriate sanction to remedy the damage."  *Manning II*, 2021 WL 3542808, at \*2 (citation omitted).  Rule 37(e)

---

[5]  The 2015 amendments to Federal Rule of Civil Procedure 37(e) created a uniform standard in determining whether spoliation of ESI has occurred.  *See* FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment.  Where Rule 37(e) applies, it provides the exclusive remedy for spoliation of ESI.  *Manning I*, 2021 WL 3557582, at \*4 (D.N.J. Apr. 29, 2021); *see also Industria de Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, No. 16-cv-6576, 2022 WL 1683747, at \*8, n.2 (D.N.J. May 26, 2022), *objections overruled*, 2023 WL 4197114 (D.N.J. June 27, 2023).

[6]  The parties do not address whether Plaintiff's burden of proof is a preponderance of the evidence or clear and convincing evidence.  *See Goldrich v. City of Jersey City (Goldrich I)*, No. 15-cv-885, 2018 WL 4492931, at \*7 (D.N.J. July 25, 2018) (comparing cases) *report and recommendation adopted as modified*, 2018 WL 4489674 (D.N.J. Sept. 19, 2018) (Wigenton, J.).  The Court need not decide which standard of proof applies because the Court's conclusions would be the same under either standard.  *Id.* (citing *Kavanagh v. Refac Optical Grp.*, No. 15-cv-4886, 2017 WL 6395848, at \*2 n.5 (D.N.J. Dec. 14, 2017)).

provides for two levels of sanctions for spoliating ESI. First, the Court, "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). To find prejudice, the moving party must offer "plausible, concrete suggestions as to what [the lost] evidence might have been." *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 83 (3d Cir. 2019) (alteration in original) (citation omitted). Second, the Court,

> only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(2).

The spoliation analysis is not a balancing test; rather, the movant must satisfy each element. *Davis v. Healthcare Servs. Grp., Inc.*, No. 16-cv-2401, 2017 WL 11723674, at *3 (E.D. Pa. Sept. 5, 2017), *opinion clarified*, 2018 WL 11484946 (E.D. Pa. Nov. 30, 2018). The failure to satisfy one element dooms the finding of spoliation. *Id*. Each element is analyzed below.

### III.    Analysis

#### A. Spoliation

##### 1. *Whether the ESI should have been preserved in anticipation or conduct of litigation*

The first element that the Court must analyze is whether ESI should have been preserved in anticipation of litigation or conduct of litigation. *Manning I*, 2021 WL 3557582, at *6.

"Rule 37(e) does not redefine the duty to preserve; rather, it incorporates the common-law duty to preserve relevant information when litigation is reasonably foreseeable." *Nagy v. Outback Steakhouse*, No. 19-cv-18277, 2024 WL 712156, at *3 (D.N.J. Feb. 21, 2024) (quoting *Bistrian v. Levi*, 448 F. Supp. 3d 454, 467-68 (E.D. Pa. 2020)). "A litigant is under an obligation to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." *Id*. In applying the rule, "a court may need to decide whether and when a duty to preserve arose. Courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." *Manning I*, 2021 WL 3557582, at *6 (quoting FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment). The determination of whether and when a duty to preserve arose is governed by a "flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 77-78 (3d Cir. 2012) (citation omitted).

Two Canoes argues that "there is little doubt that Addian's duty to preserve documents began by November 5, 2020 [with the filing of the 3M Lawsuit] and continued without interruption through the instant litigation." ECF No. 88 at 15 n.9. Addian does not quite concede this point but refers to November 5, 2020, as the first time when "any arguable duty to preserve arose." ECF No. 93 at 12-13.

The Court agrees that Addian's duty to preserve began on November 5, 2020, at which point Addian had been named a defendant in the 3M Litigation, and

Wolworth was on notice of his legal duty to preserve all relevant information in that litigation. *See Bistrian*, 448 F. Supp. at 454, 468 ("The duty to preserve arises no later than when a lawsuit is filed[.]" (citation omitted)). Given that the 3M Litigation arose out of the same course of conduct as this litigation—*i.e.*, the selling of allegedly counterfeited 3M N-95 masks—Wolworth had an obligation then, and it continued here, to preserve communications about the masks with his supplier, Fisher.

Addian's duty to preserve continued into this litigation because the two litigations overlapped: the third-party complaint against Addian was filed on January 7, 2022, *see generally* Third Party Compl., and the 3M Litigation did not officially end until February 28, 2022, ECF No. 89-15. The fact that Addian had reached a settlement with 3M in June 2021 (Wolworth Decl. ¶ 11; Henner Decl. ¶ 12; ECF No. 89-15) did not end its obligation to preserve information. The case had not yet closed, and that court maintained continuing jurisdiction over 3M's claims against Addian to enforce the consent agreement, settlement agreement, and permanent injunction. *See* Consent Judgment and Permanent Injunction at ¶ 6, *3M Co. v. Addian Inc., et al.*, No. 20-cv-04515 (N.D. Ga. June 17, 2021), ECF No. 98. And, importantly, the settlement only resolved the claims between 3M and Addian, *id.* ¶ 5—but other parties were involved in the subject transactions. Even if Addian had considered the date of settlement as the end of the 3M Litigation, Addian should have anticipated that Aobvious or Two Canoes would file suit if Two Canoes was not reimbursed the money it paid for masks it had returned to Addian and therefore could not sell. *See* Second Am. Compl. ¶¶ 49-59; Third Party Compl. ¶¶ 1-25. And, in fact, on July 16,

2021, Addian received an email that made it clear that Two Canoes was threatening litigation against Aobvious, the intermediary between Addian and Two Canoes; Aobvious, in turn, emailed Addian asking whether it had "any update."  Goldberg Decl. ¶¶ 18-19; ECF Nos. 89-16, 89-17.  Clearly, July 16, 2021, was not the first time that Addian was aware of Two Canoes' insistence on being reimbursed by Aobvious, who, in turn, was seeking reimbursement from Addian.  Therefore, I find that the duty to preserve relevant information, including any WeChat messages, began November 5, 2020, and continued through this litigation.

  2.  *Whether the ESI was lost*

Next, the Court considers whether WeChat messages were lost.  This question is not so simple to answer and requires that I place the dispute in context.  In a short time span, Wolworth traded several phones for new ones.  It started in September 2020, when his phone broke, and he obtained a new one.  Wolworth Decl. ¶ 24; ECF No. 93-3 at 101:3-10.  Any communications, including WeChat messages, that may have been on that phone did not transfer to the new phone.  Wolworth Decl. ¶ 24; ECF No. 93-3 at 101:3-10.  Because that phone broke prior to the 3M Litigation and this litigation, the Court will not impose on Wolworth a duty to preserve information that might have been on that phone. [7]  Thus, any information lost with the phone that broke in September 2020 will not be subject to a spoliation analysis.  *See Bistrian*, 448 F. Supp. 3d at 467 (Rule 37(e) "does not apply to information that was lost or

---

[7] Plaintiff has not presented sufficient information for the Court to conclude that Addian should have been on notice of the 3M Litigation prior to suit.

destroyed before a duty to preserve it arose." (citing FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment)).

A few months later, on November 5, 2020, 3M filed its lawsuit against Addian and others. Wolworth, as Addian's principal, had a duty to preserve then. *See id.* at 468 ("The duty to preserve arises no later than when a lawsuit is filed[.]" (citation omitted)). Within a year, in October 2021, Wolworth's phone broke again. Wolworth Decl. ¶ 13; ECF No. 93-3 at 101:12-15, 102:15-20. He left that phone at the store for proper electronic recycling (the "Recycled Phone"). Wolworth Decl. ¶ 15. The phone that he wanted was not available, so he went through several transactions resulting in his use of "three or four phones." ECF No. 89-7 at 103:16-105:10. One of them was a flip phone that he used as a temporary replacement. Wolworth Decl. ¶ 14. Ultimately, in February 2022, he obtained the phone that he has now. *Id.*

To prove spoliation occurred, the moving party must prove that ESI was "lost." *Williams v. First Student Inc.*, No. 20-cv-1176, 2024 WL 1132237, at *2 (D.N.J. Mar. 15, 2024) (citation omitted). "In other words, the moving party bears the burden of proof in establishing that the evidence at issue actually existed." *Id.; see also Flint Grp. Packaging Inks N. Am. Corp. v. Fox Indus. Inc.*, No. 16-cv-3009, 2023 WL 4633925, at *17 (D.N.J. June 29, 2023) ("The moving party must necessarily show that the evidence at issue actually existed, since spoliation sanctions can be imposed only when the party seeking such sanction demonstrates that relevant evidence has been lost." (citation omitted)). And, as a preliminary matter, a party may only "lose" ESI within that party's "possession, custody, or control." *Eisenband v. Pine Belt*

*Auto., Inc.*, No. 17-cv-8549, 2020 WL 1486045, at *8 (D.N.J. Mar. 27, 2020) (citation omitted).

Wolworth purportedly began communicating with Fisher about the reselling of masks in early 2020.   Wolworth Decl. ¶ 6.   They used several modes of communications: live phone calls, emails, and text messages.   ECF No. 93-3 at 64:24-65:15; Wolworth Decl. ¶ 7; Henner Decl. ¶ 14.   According to Wolworth, they communicated via WeChat only "a couple of times."   ECF No. 93-3 at 64:24-65:15; Wolworth Decl. ¶ 7 ("I communicated with Mr. Fisher by. . . infrequent messages on the WeChat mobile messaging application.").   Regarding WeChat messages, there are two relevant time periods: (1) November 5, 2020 through October 2021; and (2) October 2021 through February 2022.

      i.   <u>ESI from November 5, 2020 to October 2021</u>

Regarding the first time period, Plaintiff cites to the following testimony from Wolworth's deposition:

> **Q.**  Did you have any WeChat chats between September 2020 and late [October][8] 2021 with Robert Fisher?
>
> **A.**  I would assume so.
>
> **Q.**  Did any of those WeChat communications with Robert Fisher between September of 2020 and ·[October] 2021 pertain to 3M products?

---

[8]  Initially, Wolworth testified that he communicated with Fisher via WeChat between "September 2020 and late July 2021," but he later clarified that instead of July, he meant October.  ECF No. 89-7 at 102:15-20.

**A.** I believe so.

ECF No. 89-7 at 89:22-90:4.

Addian argues that Wolworth's testimony is insufficient to establish that relevant WeChat messages existed.  First, Addian argues that Wolworth's testimony conveys, "at most, a mere <u>possibility</u> that [he] used WeChat to talk to Mr. Fisher a small number of times during a timeframe that includes time prior to the duty to preserve about business not related to the Masks at issue in this case."  ECF No. 93 at 19.  Second, Addian argues that "[h]ad Addian been in possession of WeChat messages with Robert Fisher in November and December of 2020," they would have been collected by counsel in relation to the 3M Lawsuit and produced to Plaintiff in the instant case.  *Id*. at 5 (citing Henner Decl. ¶¶ 10-11).  Finally, Addian argues that all relevant WeChat messages between Fisher and Wolworth would have predated November 2020, at which time a temporary restraining order was entered in the 3M Lawsuit, prohibiting Addian from conducting 3M-related business.  *Id*. at 4-5; Wolworth Decl. ¶ 9.  After this temporary restraining order was entered, Wolworth asserts that he "stopped talking to anyone about the substance of the case."  Wolworth Decl. ¶ 16.  Wolworth asserts that he communicated with Fisher by telephone call "to share that [he] could no longer communicate about the issues in the case, and [he] did not communicate with [Fisher] again for a longtime thereafter." *Id* ¶ 9.  Wolworth further asserts that he does not recall having any particular WeChat communications with Fisher after the temporary restraining order but acknowledges that he stated in deposition that "it is possible that there were a few unrelated to this case." *Id* ¶ 16.

Although Addian makes persuasive arguments, on balance I am persuaded that WeChat messages between Wolworth and Fisher likely existed during a time when Addian had a duty to preserve information, between November 5, 2020 and October 2021. Wolworth's own deposition testimony cited above is sufficient to convince me. When asked whether he communicated via WeChat with Fisher between September 2020 and October 2021, he said "I assume so." EFC No. 89-7 at 89:22-25. And when asked whether the WeChat communications related to 3M products, he said, "I believe so." *Id*. at 90:1-4.[9] In contrast, when he was asked whether he communicated with Fisher between October 2021 and February 2022 about the transactions in this lawsuit, he was definitive and answered, "no." *Id*. at 100:6-8. Comparing these responses to similar questions about different time periods leads me to believe that Wolworth understood how to be precise with his response. Considering the totality of the circumstances, I find that that relevant WeChat messages likely existed.[10]

---

[9] In its Reply Brief, Plaintiff disputes Defendant's characterization that Wolworth's testimony "is only that the WeChat communications concern '3M products' (as opposed to the masks at issue)." ECF No. 94 at 4 n.3 (citing ECF No. 93 at 7). However, the portion of Defendant's Opposition cited by Plaintiff is limited to the September 2020 through October 2021 time period. To dispute Defendant's characterizations regarding this limited time period, Plaintiff points to Wolworth's testimony that he would have received a certain invoice from Fisher by way of WeChat message. ECF No. 94 at 4 n.3. (citing ECF No. 94-2 at 134:13-17). However, the excerpted testimony contains no references to any date or time when the invoice might have been sent. It is therefore unclear what relevance, if any, the testimony has to the September 2020 through October 2021 time period.

[10] As Plaintiff convincingly argues, messages related to the sale of other 3M products, even if not the exact masks at issue, would be relevant to this litigation and responsive to its discovery requests. ECF No. 94 at 4 n.3.

Those messages would have existed in Wolworth's Recycled Phone;[11] however, because he turned it in to the cellphone provider after it was damaged, the phone is no longer available for inspection and imaging.  Moreover, Defendant does not dispute that there is no way to retrieve WeChat messages that might have existed.  *See* Henner Decl. ¶ 16.  And, Fisher, the only other person who might have saved those messages is unresponsive to a subpoena, and Two Canoes cannot locate his physical address to enforce the subpoena.  *See generally* ECF No. 90.  The Court is satisfied that relevant ESI from the November 5, 2020 to October 2021 time period was lost.

ii.  ESI from October 2021 to February 2022

Next, I will turn my attention to any potential WeChat messages that were exchanged between the disposal of the Recycled Phone in October 2021 and when Wolworth obtained his current phone in February 2022.  Plaintiff again points to Mr. Wolworth's own deposition testimony in support of its assertion that WeChat messages existed during this period.  Specifically, when asked if he had "any **communications**" with Mr. Fisher "between [October] 2021 and February 2022," Mr. Wolworth replied: "Minimal." ECF No. 89-7 at 99:8-101:1 (revised to reflect correction of July to October discussed *supra* note 8) (emphasis added).  As Defendant points out, Plaintiff has only established that Wolworth and Fisher had "communications."  ECF No. 93 at 9.  Plaintiff has not established that there were

---

[11]  Aside from pointing out that the September 2020 to October 2021 time period encapsulates time when Defendant was not under a duty to preserve, ECF No. 93 at 19, Defendant offers no reason for me to believe that all relevant messages were both created and destroyed before Defendant's duty to preserve arose.  *See* Wolworth Decl. ¶ 16 ("After the 3M Lawsuit was filed, I do not recall having any particular WeChat communications with Robert Fisher, although as I stated in my deposition it is possible that there were a few unrelated to this case.").

WeChat messages exchanged in this time period.[12]  Because Plaintiff has not established that the alleged spoliated WeChat messages ever existed, I find that Plaintiff has not met its burden of establishing spoliation.  The failure to establish spoliation of WeChat messages ends the analysis for the period October 2021 to February 2022.

> ### 3.   Whether Addian Failed to Take Reasonable Steps to Preserve ESI during the Time Period November 5, 2020 to October 2021

A party's duty to preserve may require "that he take reasonable affirmative steps such as backing up the ESI on an external device or in a separate, secure location." *Goldrich I*, 2018 WL 4492931, at *9.  Here, the Court finds that Addian failed to take reasonable steps to preserve ESI during the period of November 5, 2020 to October 2021.

Having already experienced the loss of a phone in September 2020, before he had a duty to preserve ESI, Wolworth learned the hard way that WeChat messages would not automatically transfer to a new phone.  Wolworth Decl. ¶ 24; ECF No. 89-7 at 90:13-22.  After November 5, 2020, when 3M filed its lawsuit, he knew that he had a duty to preserve information.  When his other phone broke in October 2021, he

---

[12] It appears that much of the confusion lies in the distinction between "communications" and "WeChat messages."  Plaintiff asserts spoliation of *WeChat messages*.  The question that Plaintiff asked Wolworth was much broader, *i.e.*, about communications.  Communications may take variable forms, including telephone calls, text messages, emails, or messages sent via application-based platforms.  The record before this Court shows that Wolworth and Fisher communicated primarily by live telephone call.  ECF No. 93-3 at 64:24-65:15; Wolworth Decl. ¶ 7; Henner Decl. ¶ 3.  Moreover, all communications with Fisher were not lost, as demonstrated by Defendant's production of communications with Fisher in the form of text messages, emails, and documents.  *See* ECF No. 93 at 2; Henner Decl. ¶ 14.  Therefore, in context, the fact that Wolworth admitted that during this time period he had minimal "communications" with Fisher is not sufficient to establish that those communications were in the form of WeChat messages.

should have known that leaving the phone with the cellphone provider would result in the loss of information. In his declaration, Wolworth claims that he "understood that [his] phone was automatically regularly backing up to [his] Google Account." Wolworth Decl. ¶ 15. Nothing in the record shows what, if anything, he did to ensure that the Google Account was in fact preserving his WeChat messages. The Court is satisfied that Addian did not take reasonable steps to preserve ESI. *See Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 429 (W.D.N.Y. 2017) ("[D]efendants destroyed or recycled [the] laptop despite knowing that it likely contained relevant evidence that they never confirmed had been properly uploaded to another repository. . . I find that defendants did not take reasonable steps to preserve the [data]."); *Brewer v. Leprino Foods Co., Inc.*, No. 16-cv-1091, 2019 WL 356657, at *10 (E.D. Cal. Jan. 29, 2019) ("The Court further finds that [plaintiff] failed to take reasonable steps to preserve the text messages. As [defendant] highlights, and [plaintiff] fails to dispute, [plaintiff] made no effort to back-up or preserve the [phone] prior to its loss[.]" (citation omitted)). [13]

---

[13] In conjunction with its argument that Defendant failed to take reasonable steps to preserve ESI, Plaintiff states that Addian "falsely" claims that "WeChat does not automatically back up, so any efforts by Mr. Wolworth to recover those chats would have been futile." ECF No. 94 at 5. Plaintiff continues: "a perfunctory Google search would have offered a simple, step-by-step process for backing up Mr. Wolworth's WeChat. . . data," and accuses Wolworth and his counsel of failing to undertake "such a basic preservation measure, notwithstanding the litigation hold in effect." *Id*. In support, Plaintiff submits a few internet printouts that appear to provide instructions on how to create manual back-ups of WeChat files and transfer the same to a secondary device. ECF Nos. 94-3, 94-4, 94-5. Plaintiff seems to argue that Defendant should have backed up Wolworth's WeChat messages on a separate device before his phone broke. As discussed above, I have considered as much in finding that Defendant failed to take reasonable steps to preserve certain WeChat messages. However, because Plaintiff also seems to tie this argument to attempts to recover the spoliated documents (which I address in the context of the bad faith analysis below), I will note that I am unconvinced that the foregoing is indicative of an intent to deprive. In fact, it does not appear that any of the cited internet printouts (ECF Nos. 94-3, 94-4, 94-5) provide a mechanism for automatic/continual backup of WeChat messages, and each seems to require access to the original mobile device. It is therefore unclear how

   4. *Whether the information cannot be recovered elsewhere, restored, or replaced*

No one disputes that the information at issue, WeChat messages during the period November 5, 2020 to October 2021, cannot be recovered elsewhere, restored, or replaced. Therefore, this prong is satisfied.

   **B. Sanctions**

Having concluded that Two Canoes met its burden as to each prong of the spoliation test for WeChat messages during the period of November 5, 2020 to October 2021, the Court next considers whether sanctions are appropriate. Rule 37(e) prescribes the sanctions that may be appropriate, depending on the circumstances of the case. To determine appropriate sanctions, the Court must find either prejudice to Plaintiff or that Defendant acted with the intent to deprive Plaintiff's use of the ESI in the litigation. *Goldrich I*, 2018 WL 4492931, at *8. If the Court finds "prejudice to another party from loss of the information," it "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the Court finds that a party "acted with the intent to deprive another party of the information's use in the litigation" the Court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default

---

this undercuts a claim that "WeChat does not automatically back up, so any efforts by Mr. Wolworth to recover those chats would have been futile." ECF No. 94 at 5 (Plaintiff's characterization of Defendant's argument). Even taking Plaintiff's argument as true, it would, at best, support a finding of negligence or gross negligence, not bad faith or intent. *See infra.* § III-B-2.

judgment." Fed. R. Civ. P. 37(e)(2). As the moving party, it is Plaintiff's burden to show what sanctions are appropriate. *Goldrich I*, 2018 WL 4492931, at *7.

### 1. *Prejudice*

In order to find prejudice, the moving party must offer "plausible, concrete suggestions as to what [the lost] evidence might have been," *GN Netcom, Inc.*, 930 F.3d at 83 (alteration in original) (citation omitted); *see also Eisenband*, 2020 WL 1486045, at *9 ("speculation. . . is insufficient for a finding of prejudice"), and "must show that its ability to prepare effectively a full and complete trial strategy has been impeded," *Manning I*, 2021 WL 3557582, at *7 (citation omitted). "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment; *See also Manning II*, 2021 WL 3542808, at *3 (moving party had not met its burden of establishing prejudice where it "speculate[d] that there must be more information and that information must be harmful to [the spoliating party's] case.").

Plaintiff argues that the prejudice it suffers from "the loss of the communications between Addian and Mr. Fisher (liaison to Addian's upstream suppliers) is manifest." ECF No. 88 at 18. Plaintiff further argues that the communications "inevitably" concern

> critical (and likely dispositive) issues in this litigation, including whether the masks at issue were counterfeit, Addian's knowledge regarding their authenticity, and Addian's communications with Mr. Fisher regarding Addian's obligation to issue a refund for the returned goods to Aobvious (who owed that refund to [Two Canoes]) and Topway's reciprocal obligation to provide a refund to

> Addian for the counterfeit goods. As noted above, this is more than mere supposition: Mr. Wolworth conceded at his deposition that during this timeframe he discussed with Mr. Fisher the masks' authenticity and the possibility of Topway issuing Addian a refund.

ECF No. 88 at 18 (citing ECF No. 89-7 at 160:9-161:4, 194:23-195:9). Addian argues that Two Canoes' explanation is "highly implausible." ECF No. 93 at 20. Addian reasons that if such messages existed, they logically would have existed before the 3M Litigation, and thus were lost with the first broken phone that is not the subject of the spoliation analysis. ECF No. 93 at 20-21. Moreover, Wolworth himself contests Two Canoes' explanation. He states: "I did not know any products were counterfeit in 2020 and I still do not know if any products were counterfeit. I'm not qualified to make that assessment and I have never acknowledged that any of the masks at issue in this case were counterfeit in any communication." Wolworth Decl. ¶ 28.

On the record before it, the Court finds it difficult to ascertain the extent to which Plaintiff suffered prejudice, if any, from Defendant's spoliation. Wolworth has testified that he primarily communicated with Fisher by live phone call. Wolworth Decl. ¶ 7; ECF No. 93-3 at 64:24-65:15. Indeed, a text message between Wolworth and Fisher shows that they were texting to coordinate a time to speak on the phone. Henner Decl. ¶ 3; ECF No. 93-4. According to Wolworth, he communicated with Fisher on WeChat only a couple of times. Wolworth Decl. ¶ 7; ECF No. 93-3 at 64:24-65:15. Moreover, as discussed above, the spoliated messages are limited to the period of November 5, 2020 through October 2021. For this time period, it is unclear the extent of the prejudice Two Canoes has suffered, if any. That is particularly so

for two reasons. First, Addian has persuasively argued that most of the communications, including WeChat messages, between Wolworth and Fisher occurred before 3M filed its litigation on November 5, 2020, and that information was lost with the first broken phone, which is not the subject of the spoliation analysis. After November 5, 2020, the court in the 3M Litigation issued a temporary restraining order, effectively barring Wolworth and Fisher from engaging in 3M-related business. Wolworth Decl. ¶ 9. Wolworth declared that he stopped doing business with Fisher and that, to the extent that he communicated with Fisher, it was to let him know that he could no longer communicate about the issues in the litigation. *Id.* Thus, I am persuaded that, although WeChat messages were lost from November 5, 2020 to October 2021, the loss was minimal. Second, Addian preserved and produced to Two Canoes other ESI and documents, including: (1) emails in which Fisher was a recipient or sender; (2) documents that Fisher provided to Addian; and (3) text messages between Wolworth and Fisher. Henner Decl. ¶ 14. It is not as if Two Canoes is without evidence. Two Canoes has not persuaded this Court that the likely minimal WeChat messages that are missing—post 3M Litigation—has impeded "its ability to prepare effectively a full and complete trial strategy." *Manning I*, 2021 WL 3557582, at *7.

In similar situations, where the extent of prejudice resulting from spoliated evidence has been called into question, courts have deferred a decision as to the appropriate sanction until the time of trial. *See Manning II*, 2021 WL 3542808, at *4 (reserving judgment on appropriate sanctions, if any, for both prejudicial and non-

prejudicial spoliation, and submitting question regarding intent to deprive to the jury). At trial, the Court will be in a better position to evaluate Two Canoes' evidence and determine what the missing WeChat messages could plausibly establish. For these reasons, I recommend that the issue of prejudice to Two Canoes be deferred until the time of trial to determine whether sanctions are appropriate under Rule 37(e)(1).

>    *2. Intent*

Where spoliation of ESI occurs, the Court may issue sanctions pursuant to Rule 37(e)(2) "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *see also Manning II*, 2021 WL 3542808, at *2 ("A showing of bad faith, or an intent to deprive, requires that the spoliating party intended to impair the ability of the potential defendant to defend itself." (citations omitted)).[14] It is the movant's burden to demonstrate that the spoliating party acted with the intent to deprive. A showing of negligence or even gross negligence will not do the trick. *Friedman v. Philadelphia Parking Auth.*, No. 14-cv-6071, 2016 WL 6247470, at *8 (E.D. Pa. Mar. 10, 2016) (citing FED. R. CIV. P. 37 (e)(2) advisory committee's note to 2015 amendment); *CIGNEX Datamatics, Inc. v. Lam Rsch. Corp.*, No. 17-cv-320, 2019 WL 1118099, at

---

[14] Rule 37(e)(2)'s "intent to deprive" is also referred to as "bad faith." *See, e.g.*, *GN Netcom, Inc.*, 930 F.3d at 83 (finding that the district court reasonably concluded that a spoliating party "acted in bad faith" where "intentional step[s]" were taken "to interfere with" its adversary's "prosecution of its claims" against the spoliating party.); *Goldrich v. City of Jersey City (Goldrich II)*, No. 15-cv-885, 2018 WL 4489674, at *2 (D.N.J. Sept. 19, 2018) (finding that Rule 37(e)(2) sanctions were appropriate "because the circumstantial evidence strongly supports a finding that [the spoliating party] acted in bad faith, intentionally depriving his adversaries of ESI.") (Wigenton, J.); *Manning II*, 2021 WL 3542808, at *2 ("A showing of bad faith, or an intent to deprive, requires . . . .").

*2 (D. Del. Mar. 11, 2019) (Rule 37(e)(2) deals with intentional destruction or loss of ESI and "negligent or grossly negligent failure to preserve ESI," is addressed by Rule 37(e)(1)); *Pelino v. Gilmore*, No. 18-cv-1232, 2020 WL 2572361, at *5 (W.D. Pa. May 21, 2020) (same); *see also Manning I*, 2021 WL 3557582, at *10 (sanctions are unavailable under Rule 37(e)(2) where "at most the loss was due to plaintiff's inadvertence or negligence, not bad faith") *report and recommendation adopted in relevant part*, 2021 WL 3542808; *Lombardo v. Flynn*, No. 11-cv-2220, 2017 WL 11716404, at *2 (M.D. Pa. Sept. 5, 2017) ("mere negligent conduct is not an appropriate basis to impose the issuance of an adverse inference jury instruction" (citing *Bull*, 665 F.3d at 79)). Courts may look to circumstantial evidence to determine intent. *Goldrich II*, 2018 WL 4489674, at *2.

Here, Two Canoes asks for sanctions that would effectively end this litigation. Specifically, Two Canoes asks the Court to find at the summary judgement stage

> that the spoliated communications between Mr. Wolworth and Mr. Fisher indicate that the masks at issue were counterfeit, Addian knew the masks were counterfeit, Addian understood it had valid breach of contract and warranty claims against its direct supplier, and took the position that it was owed a refund from [a supplier in China].

ECF No. 88 at 5. Plaintiff points to both Defendant's failure to take reasonable steps to preserve WeChat messages after experiencing data loss in September 2020, and the subsequent "intentional[] dispos[al] of the physical phones" as proof of Defendant's bad faith. ECF No. 88 at 7, 20-21. Elsewhere, Plaintiff points to Wolworth's testimony at his deposition to establish his lack of credibility. *See* ECF

24

No. 94 at 2 n.1 ("Mr. Wolworth's 'evolving' sworn testimony and lack of documentary evidence on these critical issues reveals all the Court needs to know about Mr. Wolworth's credibility."). The record before me does not support a finding of bad faith.

Although it is uncontested that the Recycled Phone (containing the spoliated messages) was discarded, Addian denies intentionally deleting ESI. Wolworth Decl. ¶¶ 17-19, 27. The record that has been presented shows that, while Addian failed to take reasonable steps to preserve, it did take some steps to preserve or recover the spoliated ESI, including by immediately undertaking a litigation hold when the 3M Litigation commenced, *id.* ¶ 10, and continuing the litigation hold through the filing of this case, *id.* ¶ 18. Moreover, Wolworth certifies that after losing ESI in September 2020, he ensured that his applications were backing up to his Google Account, and that it was not until this lawsuit was filed (and after the messages were spoliated) that he learned that the Google Account did not remotely save WeChat messages. *Id.* ¶ 25. And, although Wolworth admits that he discarded the Recycled Phone, he certifies that he "did not believe anything further could be done to recover information from the phone" because (1) he believed that the information therein was backed up to his Google Account and (2) the device was "in multiple pieces and completely inoperable." *Id.* ¶ 15. Finally, Addian attempted to recover the spoliated messages by engaging a professional discovery vendor to examine both Wolworth's Google Account and a complete forensic image of his phone. *Id.* ¶ 25; Henner Decl. ¶ 16. Although these efforts proved insufficient, I find that Addian's collective efforts weigh against a finding of bad faith.

It is also important to note that, according to Addian, because the spoliated evidence was in the form of WeChat messages, efforts to recover them from a broken phone may have been futile.  Addian explained that, to transfer WeChat messages from one device to another, a user must log into WeChat on the "original mobile phone," navigate into the settings, select chats to transfer, and then follow instructions displayed on the screen.  ECF No. 93 at 19; ECF No. 93-9.  Thus, if the Recycled Phone was "catastrophically damaged and broken into multiple pieces," as Wolworth claimed, it is unclear that WeChat messages could have been retrieved even if he had preserved the phone.  *See* Wolworth Decl. ¶ 13; *see also supra* note 13.

To be clear, I do not condone Wolworth's decision to discard the Recycled Phone.  The more prudent course of action would have been to preserve the phone so that Two Canoes could examine it and make its own assessment.  Because Addian did preserve and produce several other forms of ESI, including communications with Fisher, and because it took certain steps to try and preserve information, I cannot find that Addian acted in bad faith.  Perhaps it acted negligently, but not necessarily with the intent to deprive Two Canoes of its claims.  *See EBIN New York, Inc. v. SIC Enter., Inc.*, No. 19-cv-1017, 2022 WL 4451001, at *11 (E.D.N.Y. Sept. 23, 2022) (considering the "technological limitations" of preserving application-based messages in finding that spoliating party did not act with an intent to deprive).  Nonetheless, because the issue of intent is one that might hinge on credibility, I recommend that Two Canoes be given the opportunity at trial to inquire about Wolworth's intent, so that the Court or the jury may determine what sanction, if any, is appropriate after

evaluating Wolworth's credibility. *See Manning II*, 2021 WL 3542808, at *4. This process is outlined in the 2015 Advisory Notes:

> Subdivision (e)(2) requires a finding that the party acted with the intent to deprive another party of the information's use in the litigation. This finding may be made by the court when ruling on a pretrial motion, when presiding at a bench trial, or when deciding whether to give an adverse inference instruction at trial. <u>If a court were to conclude that the intent finding should be made by a jury, the court's instruction should make clear that the jury may infer from the loss of the information that it was unfavorable to the party that lost it only if the jury first finds that the party acted with the intent to deprive another party of the information's use in the litigation. If the jury does not make this finding, it may not infer from the loss that the information was unfavorable to the party that lost it.</u>

FED. R. CIV. P. 37(e)(2) advisory committee's note to 2015 amendment (emphasis added); *see also Manning II*, 2021 WL 3542808, at *4.

For these reasons, I recommend that Two Canoes' request for adverse inferences against Addian at the summary judgment stage be **DENIED WITHOUT PREJUDICE**; however, I recommend that Two Canoes be given the opportunity to examine witnesses at trial to determine whether Addian acted in bad faith.

## IV.   **Conclusion**

For the foregoing reasons, I recommend that Judge Wigenton **GRANT** Plaintiff's request in part and **DENY** it in part. Specifically, I recommend that Judge Wigenton **GRANT** Plaintiff's Motion by finding that Addian spoliated evidence during the period of November 5, 2020 to October 2021, and at the time of trial, the Court may assess whether sanctions are appropriate depending on whether Plaintiff

suffered any prejudice or Defendant acted in bad faith. I recommend that all other aspects of the motion be **DENIED WITHOUT PREJUDICE**.[15]

The parties have fourteen (14) days to file and serve objections to this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); L. Civ. R. 72.1(a)(2), (c)(2). It is further **ORDERED** that the Clerk of Court shall **TERMINATE** the Motion pending at ECF No. 87 and activate this Report and Recommendation for the District Court's review.

HON. JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Dated: April 30, 2024

---

[15] This recommendation is based on the record as it currently exists. If admissible evidence is developed at trial demonstrating or further supporting prejudice or intentional spoliation, it is respectfully recommended that the trial judge should then consider whether sanctions are appropriate under Rule 37(e).